UNION CENTRAL LIFE INSURANCE COMPANY OF CINCINNATI, Plaintiff, v. JOHN EGGERS et al., Appellants; FIRST NATIONAL BANK OF CHICAGO et al., Appellees.

No. 40888.

1356

June 20, 1931.

Rehearing Denied October 5, 1931.

B. I. Salinger and Ralph Maclean, for appellants.

Powers & Gilchrist and Stipp, Perry, Bannister & Starzinger, for appellees.

Andrew Bell, for appellee, Crawford County, Iowa.

Evans, J.—We have before us a very complicated record. It is quite incapable of being reduced to a brief or succinct statement. Nor has either brief attempted such a statement. Prolixity of statement on our part is therefore quite unavoidable.

On February 23, 1931, Louis Eggers, as a "petitioner," filed in the district court of Crawford County, a petition against certain named defendants therein. It was filed in term-time and presented to Judge Hutchison, then presiding, with the request for an immediate hearing. A hearing was had thereon, after notice, on February 28. This petition directed its allegations to the pleadings and procedure in a previous case in the same court, which previous case had gone to decree on September 3, and November 17, of the previous year. It set forth purported excerpts from the pleadings and decree in such previous case; and likewise the procedure had in such case. It averred that

after decree and after execution sale thereunder, and after the appointment of a receiver to take possession of the rents and profits, the said petitioner, Louis Eggers, had acquired title by quit claim deed from the mortgagors John and Marie Eggers and had redeemed from the execution sale by paying the bid of $22.90; and that he had thereby terminated the right of the mortgagee to collect his deficiency judgment through the receivership and from the rents, profits and crops for the ensuing year. The presiding judge held that the question thus raised was adjudicated by the terms of the decree under which the execution sale was had and that he was without power to modify the terms of such decree. The former decree was entered by Judge Klinker and is referred to in the record as the "Klinker decree." The petition of the "petitioner" Louis, was denied by Judge Hutchison upon the ground stated. Thereupon the petitioner, Louis Eggers, and his grantors, John and Marie Eggers, purported to appeal from the following orders and judgment: From the order of Judge Hutchison in denying the petition; from the order of Judge Klinker entered on February 14, 1931, approving a lease made by Receiver Gilchrist to the lessee, Brocksen; and from the decree of foreclosure entered by Judge Klinker on November 17, 1930, in favor of the mortgagee. The abstract does not disclose whether the appeal purported to be joint or several. We turn now to the foreclosure case.

This involved the foreclosure of two mortgages, a first and a second. The first mortgage was held by the Union Central Life Insurance Company and amounted to a sum total of $31,000. The second mortgage was held by the First National Bank of Chicago and amounted to a total approximating $2000. The suit was instituted by the first mortgagee. The second mortgagee was named and served therein and foreclosure was had against it in favor of the first mortgagee. The holder of the second mortgage filed a cross bill against the mortgagors wherein it asked for the appointment of a Receiver to collect rents and profits as provided by its mortgage. The case of the first mortgagee went to decree on September 3, and to execution sale on October 25. At such sale the mortgagee bid in the entire farm for the full amount of its debt. On November 17, the case of the second mortgagee went to decree. By that decree, upon purported evidence, the court found that the mortgagors had

growing crops upon the land and that they were entitled to gather and remove the same and that the right of the mortgagee to the rents and profits should be deferred to begin on March 1, 1931, and to continue for that crop season, necessarily terminating however on October 25, 1931, unless redemption should be made from the sale under the first mortgage. The court also found in such decree upon purported evidence that the value of the property was insufficient to pay the second mortgage. An execution was issued under the second mortgage decree and was formally levied upon the mortgaged land and a purported sale was had on a bid of $22.90, which was the amount of the costs thereof. Thereupon the mortgagors conveyed the property to the son, Louis, who purported to redeem from the second execution sale, all of which was done on or prior to January 31, 1931. Broadly speaking the claim of appellant, Louis, is that his redemption of the *land* from the second execution sale, operated as a matter of law to discharge the rents and profits from the operation of the mortgage clause and from all liability for the deficiency judgment.

II. It will be seen from the foregoing that the first problem which thrusts itself upon us is that of procedure. Two proceedings were had and tried in the district court and both are appealed from by the three appellants. Louis was not a party to the first proceeding; nor were John and Marie parties to the second. They join in one appeal from both proceedings. The present appeal is prosecuted under the title of the first proceeding in the district court, with the addition however of the name of Louis, as "petitioner-appellant." Neither proceeding below carried the title thus adopted for this appeal. The abstract does not disclose the title under which the second proceeding was litigated except by inference. The answering defendants in that proceeding were as follows: First National Bank of Chicago, Leon W. Powers, Hugo P. Saggau, Clerk of the District Court, A. C. Greene, Sheriff of Crawford County, and Gus Brocksen (the lessee). The prayer of the petitioner was as follows:

"Wherefore, this petitioner prays an order formally terminating the said pretended receivership so far as petitioner is concerned; that said pretended receiver be restrained from in any manner interfering with the possession of this petitioner

of the said lands or from executing any leases to same. It is further prayed that the court order and decree that any lease or leases which may have been executed by the receiver are null and void. It is further prayed there be an order restraining the said Gilchrist both as an individual, an attorney, or a receiver, and restraining the said Leon W. Powers, both in person and as attorney, from in any manner interfering with the possession of said lands on part of this petitioner. It is further prayed there be an order restraining the said Brocksen from attempting to take possession of said lands or in any manner interfering with the possession of this petitioner. It is further prayed that there be an order directing the said clerk of courts and the said sheriff neither to issue nor to serve any writ of possession herein until the further order of this court. Petitioner further prays an order restraining the said First National Bank of Chicago, Illinois, cross petitioner, from interfering in any manner with the possession of this petitioner—and that petitioner have such other, further, and different relief as may be equitable in the premises.''

None of the parties named as defendants in the second proceeding, except the First National Bank of Chicago, were parties in the foreclosure case; and none of them except such bank appear as parties in the title of this appeal. The purported appellees have moved to dismiss the appeal; but the motion is not predicated upon the ground here indicated. They moved to dismiss on the ground that John and Marie Eggers have transferred their interest in the case and therefore have no further interest therein. This ground is not tenable if for no other reason than that the statute forbids the abatement of a suit because of a transfer of interest.

But the failure of the appellee to challenge our jurisdiction on appropriate grounds, does not necessarily operate to confer jurisdiction. In view, however, of the fact that the question of jurisdiction is not raised on a proper ground, and is therefore not argued, we have turned to a consideration of the merits of the case as presented, and we find it less difficult to determine the merits than to solve the riddle of procedure. We turn to such consideration.

III. Three orders are appealed from. We consider first

the order of Judge Hutchison. The following excerpts from the order of Judge Hutchison will be sufficient to indicate the general character of the order thus appealed from:

"The judgment and decree on the issues of the cross petition determine that a receiver should be and was appointed. It determined of what this receiver should and what he should not take possession. It authorized and empowered him to lease the premises from March 1, 1931, to October 25, 1931, and to apply the rentals on any deficiency judgment that there might be on the execution sale for which it provided. It decreed that debtors were to have possession of the premises until March 1, 1931, and were at that time to surrender possession to the receiver or to his lessee. These parties were all in court, represented by counsel. They excepted to the judgment and decree. But, in the judgment of the undersigned, whether right or wrong, the judgment therein entered was and is final and conclusive until set aside on appeal, and this Judge in this hearing is not at liberty to reverse, modify or ignore the judgment and decree thus entered."

In appealing from this order, the appellant has virtually no standing ground. The dismissal of the petition by Judge Hutchison was predicated solely upon the ground that the period of the receivership was covered by the terms of the decree and therefore adjudicated. This ground was manifestly true. The foreclosure decree did fix the period of the receivership for the purpose of collecting the deficiency judgment as extending from March 1 to October 25, 1931. The order of Judge Hutchison simply recognized the existing decree according to its own terms. The order was therefore proper even though the decree of Judge Klinker should be deemed erroneous.

 The order of February 14, 1931, referred to in the notice of appeal, was entered by Judge Klinker. It was an order of approval of the lease with Brocksen, as lessee. The lease thus presented and approved, was in strict accord with the provisions of the existing decree. The claim of the appellant is that he had no notice of it and that therefore he was not bound by it. It is also urged that Judge Klinker had no jurisdiction to make it. The point thus made is not argued further than to make reference to our cases where we have held that the mortgagor is entitled

to notice of the final report and final discharge of a receiver. Such holding has little application to this point. This was not an order of discharge. At most it was interlocutory. If the appellant was dissatisfied therein, he could have moved for its modification and could have been heard thereon. He did not do so. In his petition before Judge Hutchison, he prayed that the lease be deemed null and void on the ground that Judge Klinker had no power to order or approve it. The attack upon the lease is an attack upon the decree. If reviewable at all, it is reviewable as a part of the decree. If the decree itself is sustainable, then the appellant may not predicate error upon the making of the lease or upon the approval of it. In short if the appellant is entitled to a reversal, it must be predicated, if at all, upon error in the decree of Judge Klinker. To that question we turn.

■ IV. As already indicated the foreclosure decree in the district court was a double-header. Decree was entered for the plaintiff on his first mortgage on September 3, 1930. On October 25, following, the mortgaged land was sold under special execution for the full amount of the mortgage, to wit, $31,000. On November 17, following, foreclosure decree was entered for the First National Bank of Chicago on its second mortgage, including an order for special execution and the appointment of a receiver to take possession and to collect rents and profits under the provisions of such mortgage. Thereafter a special execution was issued under the latter decree and was formally levied upon the same land and a second execution sale had. The mortgagee placed a bid thereon of $22.90 and credited the same on his deficiency judgment. The confusion of this case results from such purported second execution sale. Louis Eggers, as grantee of the mortgagors, purported to redeem *from the second sale*. No redemption was made or offered from the execution sale under the first mortgage. When decree was entered upon the second mortgage, the land had been already sold under execution upon the first mortgage. After the first execution sale, the only remaining interest to the mortgagor was his right of redemption, and his right of possession up to October 25, 1931. Neither of these rights of property as distinguished from the property itself as a whole, could be sold or seized under execution. See Sayre v. Vander Voort, 200 Iowa 990; Wissmath Packing Com-

pany v. Power Company, 179 Iowa 1309. The theory of the appellant is that when he redeemed from the bid of $22.90 on the second execution sale, he divested the execution-plaintiff of his lien upon the land and of all his rights under his mortgage, including his right to the rents, profits and possession pending the year of redemption. The argument necessarily carries the assumption that it was essential to the mortgagee to maintain his lien upon the land in order to enforce the receivership provisions of his mortgage. A deficiency judgment is necessarily divested of its lien upon the land, as such. If extinction of the lien by execution sale terminates the right of the mortgagee to enforce the receivership provisions of his mortgage, then there could never be a collection of a deficiency judgment out of the rents and profits and possession. To state the position of the appellant more clearly, we quote from the Reply Brief of his distinguished counsel, as follows:

"It is probably true, that if the mortgagor had made redemption that would not affect the amount of the debt nor affect what was pledged as security for the debt, including right of possession until sheriff's deed issued. The trouble is that we are not dealing with the *mortgagor*. *Undoubtedly if he made redemption the land and its usufruct would become subject to the deficiency judgment*. But that is not true, and this court has held it is not true, so far as the *grantee* of the mortgagors is concerned."

The foregoing is a concise statement of the fundamental ground of appellant's case. In support of the foregoing, appellant relies for authority upon Danford v. Lindsey, 178 Iowa 834, 836, and Escher v. Simmons, 54 Iowa 269, 275. The cited authorities fall short of the mark. These authorities sustain the right of the grantee of a judgment-debtor to redeem the granted land from execution sale and thereafter to hold the same free and clear of the lien of the creditor's deficiency judgment. This is their closest approach to appellant's case. In the application of these authorities, the appellant Louis could redeem from the execution sale under either the first or second mortgage, free and clear from any judgment-lien in favor of the second mortgagee. The deficiency judgment has necessarily ceased to be a lien upon the land, as such. The appellant contends that the

second mortgagee loses not only his judgment-lien against the land as such, but that he loses all other remedy, which he may have had under his mortgage. This is the vital distinction. We have held definitely that the right of a mortgagee under the receivership proviso of his mortgage to appropriate to the payment of his debt the rents and profits of the mortgaged land, is a right distinct from his judgment lien upon the land itself and is *"additional"* to such lien. Equitable Life Insurance Company v. Rood, 205 Iowa 1273, 1276. Pursuant to this authority, the second mortgagee did not lose the benefit of the receivership proviso when he extinguished his judgment-lien upon the land, as such. It is to be noted that the appellant concedes that the second mortgagee maintained his rights to these rents and profits as against the principal defendant, the mortgagor, but that he lost them as against the grantee of the mortgagor. The distinction is not tenable. The grantee took under a quit claim deed. As between him and his grantor, he took all rights of the grantor including rents, profits and possession. But he took the same subject to the existing and prior contract of the grantor. His right could rise no higher than the then-existing right of his grantor. The right of the grantor was subject to the receivership proviso. If the grantee were to redeem from the execution sale under the first mortgage, he would occupy a more advantageous position than the mortgagor only in the sense that he would not be subject to *after-acquired* rights of the judgment-creditor against his debtor. If the mortgagor were to redeem, the judgment-lien of his creditor would attach *anew* to the land as it would to any after-acquired property of the debtors. The right thus arising would not be an existing right at the time of the acquisition of the land by the grantee before redemption. The grantee would take the then-existing rights of the debtor, in such a case, and such is what he takes, and takes only, in the present case. In neither case does the grantee under a quit claim deed take any better or greater right than the then-existing right of his grantor.

 It is also suggested by appellant that he took without notice in that the mortgagee had not recorded his mortgage *as a chattel mortgage*. It was not essential that the mortgage be so recorded. The mortgagee does not take as under a chattel mortgage. His lien attached only with the beginning of his

foreclosure suit. This was brought in regular method and form. It was not only pending, but had gone to decree before appellant acquired his quit claim deed. There is no claim that proper entries were not made upon the court's records. He was thereby charged with notice of *lis pendens*.

It is urged that by the terms of the decree appointing the Receiver, the court limited his possession to the period of redemption in terms. The decree should be construed in its entirety. The Abstract does not purport to set it out in full. A part of it is set forth in the order of Judge Hutchison. At the time such order was entered, the property had already been sold under execution under the first mortgage decree. This occurred on October 25, 1930. No one was, or is, expecting to redeem from such sale. The maturity of the sheriff's deed was a fixed date. The right of rents, profits and possession, either of the mortgagor or the second mortgagee, could not extend beyond that date. The court fixed the period of the receivership to terminate on such date.

We reach the conclusion therefore that the right of the mortgagee to the rents, profits and possession for the cropping season of 1931 was neither defeated nor diminished by the fact that he reduced his claim to a deficiency judgment and thereby divested his judgment-lien. It necessarily follows that a redemption from the execution bid, which was no part of the deficiency judgment, could not defeat the collection of such deficiency judgment from the rents, profits and possession as provided in the receivership proviso.

The judgment below is accordingly affirmed on all points.— Affirmed.

Faville, C. J., and Stevens, De Graff, Morling, Kindig, Wagner and Grimm, JJ., concur.