LINCOLN JOINT STOCK LAND BANK OF LINCOLN, NEBRASKA, Appellee, v. L. O. BUNDT et al., Appellees; ELLA G. WOOD, Appellant.

No. 46489.

Juni 6, 1944.

Reynolds, Meyers & Tan Creti, of Carroll, for appellant.

R. L. Sifford, of Carroll, for appellee.

Miller, J.— █ This is a suit in equity to foreclose a real-estate mortgage. It was commenced in 1932. Various continuances were granted under the moratorium statutes. Eventually, on April 10, 1939, the plaintiff recovered judgment for $50,570.24 and costs of $215.20. The decree ordered foreclosure of the mortgage against the real estate and appointed a receiver ''to take charge of the real estate hereinafter described from March 1, 1939, until lawfully discharged and have full power and authority to manage said real estate from March 1, 1939, until lawfully discharged and subject only to the orders of the above named court.'' Special execution issued and, on May 20, 1939, the real estate was sold to the plaintiff herein, leaving a deficiency judgment of $6,000. The receiver has had custody of the real estate and the income therefrom since his appointment.

On January 17, 1940, Ella G. Wood, defendant and appellant herein, who was the owner of the real estate prior to the foreclosure, filed in the United States District Court in Nebraska a petition for relief under the Frazier-Lemke Act [11 U. S. C., section 203]. On May 20, 1940, Ella Wood reported the pendency of said bankruptcy proceedings to the trial court herein and moved the court ''to prohibit and stay any further procedure or action in the above entitled case during the pendency of the above entitled proceeding in the Federal Court named herein.'' On January 14, 1941, Ella Wood filed an application

praying that the court require the receiver to fully account for all rents received from the land involved in this action and for all expenditures made by him during the years 1939 and 1940, and that the court direct him to surrender to the referee in bankruptcy all funds in his hands received from rents collected upon said land, and all notes or leases which he holds against the tenant occupying said land. On March 6, 1941, the bankruptcy proceedings were dismissed but on April 19, 1941, they were reinstated and on April 21, 1941, the reinstatement thereof was reported to the trial court by Ella Wood.

On July 5, 1941, the receiver herein filed a report showing $3,933.23 on hand and asserting that the cause had not been fully determined or a sheriff's deed issued for the reason that Ella G. Wood sought relief by voluntarily filing a petition in bankruptcy in the District Court of the United States for the District of Nebraska, under the provisions of the Frazier-Lemke Act, and the cause has been held in abeyance and no sheriff's deed has issued, and asking that the funds on hand be held for application on the deficiency judgment, subject to the orders of the court. On July 22, 1941, the trial court entered an order herein as follows:

"The Court hereby retains jurisdiction for further orders in reference to the allocation of net balance above mentioned and a disposition of the same in whole or in part as to the deficiency judgment of $6,000.00 as reported in said receiver's report upon the final determination of said cause and the rights of Ella G. Wood because of the voluntary bankruptcy proceedings of Ella G. Wood under and by virtue of the Frazier-Lemke Act."

On November 29, 1941, the motion of the Federal Land Bank to dismiss the bankruptcy proceedings was overruled by the United States District Court. On December 26, 1941, Ella Wood moved the trial court herein that the receiver be discharged after a full accounting showing his acts and doings during the term of his appointment and that any property, funds, or moneys in his hands be turned over to the clerk of the United States District Court at Norfolk, Nebraska, to be disposed of pursuant to the order of the said United States Court in the bankruptcy proceedings. On July 10, 1942, the United States Circuit Court

of Appeals reversed the decision of the United States District Court and ordered that the cause be remanded to the district court with directions to dismiss the proceeding. On October 21, 1942, the mandate was issued by that court and, pursuant thereto, the United States District Court, on October 29, 1942, dismissed the proceedings. On November 13, 1942, a sheriff's deed was issued to plaintiff herein. On November 14, 1942, said deed was recorded in Carroll county and on November 20, 1942, it was recorded in Greene county.

On January 12, 1943, the receiver filed his final report herein showing a balance on hand of $11,671.19 and praying that his accounts be approved and that he be directed, authorized, and ordered to disburse said balance of $11,671.19 in accordance with such order, judgment, and decree as the court might enter. On April 23, 1943, Ella Wood filed an application herein which asked, ''that out of the funds now in the hands of said Receiver, to-wit, $11,671.19 that said deficiency judgment of $6,000.00 with interest on same at 5% from May 20, 1939, be first paid to the Lincoln Joint Stock Land Bank of Lincoln, Nebraska, and the balance of said $11,671.19 be paid to her as title holder and owner of said land, all of said rentals having accrued prior to the 13th day of November, 1942, at a time when the said Ella G. Wood was the owner and title holder of said real estate.'' To this application plaintiff forthwith filed a resistance which asserted that the net sum of $1,675.15 was collected during the period of the year of redemption, to wit, May 20, 1939, to May 20, 1940, and such sum is applicable on the deficiency judgment of $6,000, and praying that the court apply to the deficiency judgment of $6,000 the sum of $1,675.15 and direct and order the receiver to pay the balance to the plaintiff.

On June 21, 1943, Ella Wood withdrew her former application and asserted that the judgment herein did not provide that any moneys collected by the receiver should be applied on any deficiency judgment that might be obtained; that no application was made by plaintiff at any time within two years from and after the 10th day of April, A. D. 1939, for the application of any funds in the hands of the receiver to the payment of said deficiency judgment; that the judgment is now barred by the statute of limitations as provided by section 11033.1 of the

1939 Code of Iowa, and said judgment, after a period of two years, had no force or vitality; that all rents collected by the receiver up to the date on which a deed was obtained to the premises be paid to her.

At the hearing on the receiver's final report and the applications of the parties in reference thereto, certain facts were stipulated. It was also stipulated that the court take judicial notice of all proceedings had and all filings herein, together with all acts and doings of the sheriff of Carroll county in reference to the special execution issued herein or sale had thereunder and the return thereof. On September 9, 1943, the court made written findings of fact and conclusions of law, pursuant to which decree was entered September 28, 1943, approving the receiver's final report, fixing certain fees, and providing that the receiver pay to the plaintiff the sum of $1,675.15 to apply on the deficiency judgment of $6,000 and the further sum of $9,896.04 as the absolute property of the plaintiff. Judgment was entered against Ella G. Wood for costs taxed at $32.10. She has appealed to this court. The plaintiff will be treated as the sole appellee.

I. The first question for our determination is whether the court erred in refusing to apply section 11033.1, Code, 1939, to the deficiency judgment. This statute provides as follows:

"From and after January 1, 1934, no judgment in an action for the foreclosure of a real estate mortgage * * * shall be enforced and no execution issued thereon and no force or vitality given thereto for any purpose other than as a set-off or counterclaim after the expiration of a period of two years from the entry thereof."

This statute was recently construed by us in the case of Deaton v. Hollingshead, 225 Iowa 967, 973, 974, 282 N. W. 329, 333. In that case the judgment was recovered on January 19, 1935; execution was issued on December 21, 1936, but the sale under the execution did not occur until March 26, 1937, over two years after the entry of the judgment. The trial court held that the execution sale was void. In reversing its judgment, we state:

"Plaintiffs stress the statement in section 11033-e1 that no

judgment 'shall be enforced * * * and no force or vitality given thereto for any purpose' after two years from the entry of the judgment. This phrase means that after two years, no action could be brought on the judgment; no execution could issue thereon; the judgment would not be a lien; no proceedings to *enforce* the judgment could be commenced by the issuance of an execution; and, generally, the *judgment* would be without force or effect. However, the statute, section 11648, required the judgment to be enforced by execution, and, after a valid execution is issued, the proceedings are under the execution.

"Section 11649 states that an execution may issue at any time before the judgment is barred by the statute of limitations. Section 11033–e1 provides that no execution shall be issued after the expiration of two years from the entry of the judgment. We cannot distort the clear meaning of these statutes by construing them to require the execution to issue for a period prior to the expiration of the statutes of limitations as will permit all proceedings under the execution to be completed prior to the expiration of the period. The Legislature did not intend to compel the judgment creditor to realize the benefit of his execution and fruits of his judgment within two years.

"A judgment is enforced by execution proceedings. We hold that if these proceedings are instituted by the issuance of an execution, and levy is made during the lifetime of the judgment, a sale under such proceedings, though had after the judgment is barred by the statute of limitations, is valid."

While the trial court herein did not expressly so find, we are of the opinion and hold that the foregoing pronouncement is conclusive against appellant's contention herein because the statute does not apply to proceedings in court to enforce a judgment if those proceedings are timely commenced. In the case now before us appellee undertook to enforce its judgment by the issuance of an execution and sale thereunder. This was timely. In addition to the sale of the real estate through execution, appellee undertook to reach the rents and profits by the appointment of a receiver. This brought such assets into the hands of the court. In McCarthy v. Cutshall, 209 Iowa 193, 196, 197, 225 N. W. 865, 867, we state:

"The receiver was an officer of the court. It is the general rule that property in the possession of a receiver is in custodia legis. Home Sav. & Tr. Co. v. District Court of Polk County, 121 Iowa 1; State Cent. Sav. Bank v. Fanning Ball-Bearing Chain Co., 118 Iowa 698; First Nat. Bank v. White Ash Coal Co., 188 Iowa 1227."

In Sioux Falls Broadcasting Assn. v. Henry Field Co., 226 Iowa 874, 878, 285 N. W. 155, 157, we state:

"A receiver is ordinarily exempt from garnishment because the funds in his possession are in custodia legis."

After the receiver took charge of the real estate, the rents and profits could not be reached by execution or garnishment. The judicial process for the application thereof to the enforcement of the deficiency judgment had been commenced.

In Union Central Life Ins. Co. v. Eggers, 212 Iowa 1355, 1363, 237 N. W. 240, 244, we state:

"We have held definitely that the right of a mortgagee under the receivership proviso of his mortgage to appropriate to the payment of his debt the rents and profits of the mortgaged land, is a right distinct from his judgment lien upon the land itself and is *additional* to such lien."

In Farmers Sav. Bk. v. Pomeroy, 211 Iowa 337, 338, 233 N. W. 488, 489, we state:

"The right of the plaintiff in a foreclosure action, when such is permissible, to the appointment of a receiver, is a part of the remedy in equity for the satisfaction of his claim. The receiver is not appointed for the benefit of creditors, but as an aid to the mortgagee, in carrying out an appropriate remedy in equity."

By reason of the foregoing, it is apparent that the appointment of a receiver to collect the rents and profits and to apply them on the deficiency judgment was a part of the remedy utilized by appellee to enforce its judgment. This remedy was invoked simultaneously with the entry of the decree herein. As stated in Deaton v. Hollingshead, supra, the legislature did not intend that the judicial function be completed within the two-

year period. The limitation applies to the commencement thereof only.

In addition to the foregoing, the trial court held that, under the rule announced by the United States Supreme Court in Kalb v. Luce, 308 U. S. 433, 60 S. Ct. 343, 84 L. Ed. 370, the bankruptcy proceedings, commenced by appellant in the United States District Court of Nebraska, operated as an automatic stay of the proceedings herein, so that, if section 11033.1 were applicable, it was tolled by her own activities and she cannot now claim the benefit of the statute. Certainly, to hold otherwise under the record herein would reach a result so unconscionable as to shock the conscience of a court of equity.

II. Appellant's only other assignment of error challenges the court's holding that appellee, as the purchaser at the execution sale, was entitled to the rents and profits accruing after the year of redemption. The contention is that appellee did not become entitled to the rents and profits until the sheriff's deed issued; that, if the deficiency judgment is enforceable, any income received prior to the issuance of the deed should be applied thereon and the balance remaining belongs to appellant as owner of the property.

Reliance is had on the case of Peoples Sav. Bk. v. McCarthy, 209 Iowa 1283, 1286, 228 N. W. 7, 8, wherein we state:

"It is appellees' contention that the owner of the title to the premises under a mortgage foreclosure is entitled to the possession of said premises until sheriff's deed is issued; in other words, that the title of the owner is not divested until a new title is acquired by the execution of the sheriff's deed, and that the redemptioner is entitled to possession of the foreclosed premises until such sheriff's deed has been issued. There can be no question but that this is the general rule. Code, 1924, Section 10053; Norman v. Dougan, 201 Iowa 923; Goldstein v. Mundon, 202 Iowa 381. The sheriff's certificate of sale does not entitle the holder thereof to the possession of the premises or to receive the rents and profits. It is the execution and delivery of the sheriff's deed that divests the title and that carries with it the right to the possession of the premises and the rents and profits therefrom."

The foregoing pronouncement is immediately followed by this statement:

"It would therefore follow, as a matter of law, that the appellees would be entitled to the possession of the premises and to the rents and profits thereof until the date of the execution and delivery of the sheriff's deed, to wit, March 17, 1927, if there were nothing in the record barring such right. Unless appellees are so barred, the law would award them the rents and profits until the time of the actual delivery of the sheriff's deed. We are therefore called upon to construe the stipulation which was entered into at the time of the hearing on the application of Catherine to redeem. It was then provided that: 'The rights of all parties concerned in this proceedings are to remain in statu quo until the finding of the final decree.'"

The order that was issued pursuant to this stipulation is quoted at the following page, to wit:

"'The right of redemption of all other mortgagors [appellees] under this third mortgage was terminated on February 23, 1926, and for the reason that this matter is determined as of that date; and for the further reason that the bank was entitled to a deed to an undivided two-thirds interest in said property from and after the date of February 23, 1926, it is therefore ordered that the bank be treated as the owner and title holder of an undivided two-thirds interest from said date, for all intents and purposes the same as though a sheriff's deed had been issued to it on said date.'"

In construing this order we state:

"Under this order, the subsequent execution of the sheriff's deed related back and was referable to the date when the period of redemption expired as between the parties to such foreclosure proceedings. The parties had a legal right to stipulate that the issuance of a sheriff's deed should be held in abeyance, pending the final determination of the right of Catherine to redeem, and that the parties should not be affected by the fact that the issuance of the sheriff's deed was so withheld. The court expressly decreed, in finally passing upon said matter, that the rights of the appellees as mortgagors, should, under such decree,

be terminated as of the date when the sheriff's deed was due. The order of the court fixing said rights as of the date that the sheriff's deed was due was, we think, in harmony with the stipulation of the parties, and not having been appealed from, it was final, and determinative of the matter. This being true, the appellant was entitled to the possession of the premises and the rents and profits therefrom from and after the date when the said sheriff's deed was due, to wit, February 25, 1925, and was accordingly entitled to the portion of the crop raised upon said premises in the hands of the receiver. The order of the court awarding said crop to the appellees was erroneous, and it is —Reversed.''

In the foregoing pronouncement we state that the order fixing the parties' rights under the stipulation was not appealed from and became a finality. But we also state that the order was ''in harmony with the stipulation of the parties.'' There was no such stipulation here, but appellant's proceedings in federal court accomplished the same result. The matter was held in statu quo until appellant's rights under the Frazier-Lemke Act were determined. Appellant having thus immobilized the proceedings in the trial court should now be accorded the same treatment which this court accorded in Peoples Sav. Bk. v. McCarthy, supra. The decree of the trial herein accomplished that result. It must be, and is,—Affirmed.

All Justices concur.