HARRY I. BALL, appellee, v. WARD E. WILLIAMS et al., defendants; WARD E. WILLIAMS, appellant.

No. 49589.

(Reported in 93 N.W.2d 723)

218

Siegers & Bedell, of Newton, for appellant.

Cross, Hamill & Selby, of Newton, and Jones, White & Johnson, of Ottumwa, for appellee.

LINNAN, J.—This controversy involves the question of the right of possession and the right to rents and profits following the foreclosure of a second mortgage covering a 280-acre farm in Jasper County wherein a receiver was appointed to take possession of the land and rent the same during the period of redemption.

Plaintiff-appellee filed his action asking for personal judgment against the appellant, Ward E. Williams, on two promissory notes and foreclosure of a real-estate mortgage securing the same and asking for the appointment of receiver. The mortgage contained the following receivership provision:

"It is further provided that in case action is brought for foreclosure of this mortgage, the mortgagee is authorized to take immediate possession of said property and to rent the same and shall be liable to account to said mortgagors only for the net profits thereof, and for said purpose a receiver for said premises and rents and profits thereof may be appointed by the court or judge thereof."

A hearing was had on the application for the appointment

of receiver prior to final decree, resulting in the appointment of a receiver for all of the land except the homestead forty acres, with the direction that the receiver lease the land to the appellant and wife, if they so desired, retaining jurisdiction as to the appointment of receiver for the homestead until after special execution sale. Pursuant thereto the receiver did lease this land to appellee for a term commencing May 7, 1957, and ending December 11, 1957. Thereafter on May 29, 1957, there was filed certain "Conclusions of Law" and a final decree of foreclosure. In the Conclusions of Law, the findings in the prior order of May 3, 1957, were confirmed and also contained the following statement: "that the mortgagors had consented that a receiver be appointed for the homestead at the time of the decree instead of waiting until after the foreclosure sale."

The decree confirmed all of the provisions of the prior order and appointed the same receiver to take immediate possession of the homestead forty "from the date of the commencement of this action and pending the Sheriff's Sale and during the statutory year of redemption." The decree further entered judgment against the mortgagor for the total sum of $27,091.15 and decreed foreclosure of the mortgage by sale at special execution in the customary manner. A lease was then made of the homestead forty for the same term as the balance of the land.

Prior to the commencement of plaintiff's action, a prior mortgage held by the Mutual Benefit Life Insurance Company had been foreclosed and the land sold under special execution issued in that case on December 11, 1956, and the land was bid by Poweshiek-Jasper Farm Service Company for the sum of $36,350, which purchaser held a lien junior to the first mortgage but superior to appellee's second mortgage.

No special execution sale was held under appellee's decree, but on August 16, 1957, appellee made a statutory redemption under chapter 628 of the 1954 Code of Iowa from the prior foreclosure by paying the full amount due on the Sheriff's Certificate of Sale, to wit: $38,159.58 to the Clerk of Court and by filing Affidavit of Redemption wherein appellee stated he was willing to credit on his second mortgage lien judgment in making redemption the sum of $22,000, leaving a deficiency of

220

$5902.86. No question is raised as to the sufficiency of the redemption proceedings.

Subsequent thereto and on October 31, 1957, appellant filed "Motion to Terminate Receivership, Restore Possession, Rents and Profits to Ward E. Williams, Vacate Judgment and Decree and to Retax Costs." A resistance thereto was filed and a hearing was had resulting in the overruling of the mortgage in its entirety. It is from this ruling that this appeal is taken.

Appellant's motion is far too lengthy to be set out in full in this opinion, but boiled down to its basic essentials it is bottomed upon the fundamental proposition that when appellee made his statutory redemption instead of selling the land at special execution under his second mortgage, he abandoned and discontinued this action and that, therefore, there was no legal basis for the continuation of the receivership. In his motion appellant asked that the personal judgment and decree of foreclosure be vacated and set aside, the receivership dismissed, that he be restored to possession, and all costs of the action be taxed to the appellee, and, in the alternative, that if the judgment and decree be not vacated the costs be retaxed against the appellee.

I. While the position of appellant in this case is most ingenious, it is ultratechnical, unsound in principle, and not such as makes any appeal to a court of equity. What appellant is in effect asking us to say is that when appellee made his statutory redemption and credited $22,000 on his judgment, it completely and fully extinguished his entire judgment the same as if he had in filing his affidavit of redemption stated he was willing to credit the full amount of his judgment, interest and costs in making redemption. This we are not prepared to do. Appellee in making redemption stated he was willing to credit the sum of $22,000 to the land but no more. This exhausted the primary security but left $5902.86 of the judgment to be satisfied out of the rents and profits from the land.

It is a fundamental proposition of law too well known to require citation of authorities that a party litigant will not be required to go through useless formal procedure for the protection of his rights. That is what appellant is asking here. If

appellee had proceeded with special execution sale and had bid in the land for $22,000, he still would have had to make redemption from the first mortgage sale within the statutory period or completely lose all his rights to the primary security. He would have gained nothing and would have been burdened with the unnecessary expense of the second foreclosure sale. The deficiency was just as effectively established by the statutory redemption as it would have been by sale.

A good illustration of the general rule that equity will not require the doing of a useless thing is found in the case of Gaskins v. Bonfils, 8 F. Supp. 832, where at page 837 the court said:

"The defendants further contend that the suit here is premature in that it must be preceded by a suit upon the judgment against the defendant in the jurisdiction where the creditors' suit is brought. This is a correct statement of the law under ordinary circumstances. The exception is set forth in National Tube Works v. Ballou, 146 U. S. 517, 13 S. Ct. 165, 36 L. Ed. 1070, in that it may be made to appear that it is impossible to obtain a judgment in any court within the jurisdiction. It is frankly admitted by counsel that the Post or Star Company never qualified to do business in Colorado where this suit is brought, nor did it ever conduct business in such jurisdiction. The authorities are numerous that under such circumstances a legal service could not be secured in a foreign district by an attempted service upon any officer or director of the corporation. So that the institution of such a suit would have been a vain thing and equity will not require it."

To sustain appellee's contention would render nugatory the provisions of Code section 628.19, which provides as follows: "628.19 Credit on lien. If he is unwilling to hold the property and credit the debtor thereon the full amount of his lien, he must state the utmost amount he is willing to credit him with."

II. Appellant's basic proposition is stated at pages 13 and 14 of his Brief and Argument as follows: "It is the appellant's contention that the appellee abandoned, waived and discontinued this action and that he has no rights whatever, based upon

or arising out of the appellee's mortgage, which were enforceable after August 16, 1957."

 In adopting this erroneous major premise, appellant rather begs the entire question. Abandonment is primarily a question of intent. The very case which he cites, Pitzenberger v. Schnack, 215 Iowa 466, 469, 470, 245 N.W. 713, 714, states the rule as follows:

"To constitute an abandonment, there must be a 'relinquishment or surrender of rights or property by one person to another; a giving up; a total desertion. It includes both the intention to abandon and the external act by which the intention is carried into effect.' Vol. 1, Words & Phrases, p. 5.

" 'In a technical sense, the word means the relinquishment of a right; the giving up of something to which one is entitled; the giving up of a thing absolutely without reference to any particular person or purpose.' Ballentine Law Dictionary p. 1.

"Many cases have defined the term 'abandonment' as used in the law, but in all of them will be found that intention is an element of abandonment."

That abandonment is a question of fact, as laid down in the case of Bennett v. Bowers, 238 Iowa 702, 706, 707, 28 N.W. 2d 618, 620, we said:

"Abandonment is a question of fact. 1 C. J. S., Abandonment, section 8; Ray Coal Mining Co. v. Ross, 169 Iowa 210, 217, 151 N.W. 63, 65.

"In the cited case, this court (Gaynor, J.), said:

" 'Abandonment involves an intent and purpose to surrender the rights acquired, accompanied by acts indicating that purpose and intent. It is a question of fact and not of law.' Citing 2 Washburn, Real Property, 82.

"Appellant raises the issue of abandonment by arguing that the interests of the titleholders, the Bowers, had various liens thereon, that these were not paid and no attempt was made by them to redeem, and that they made no appearance in the case. There is no other evidence in the case of any act, word, or intent on their part, nor is there anything in the record to indicate in favor of whom, if anyone, they intended to relinquish

their rights. We hold that such a showing falls far short of showing that the Bowers had abandoned the property."

In a more recent case, Storck v. Pascoe, 247 Iowa 54, 64, 72 N.W.2d 467, 472, 473, we reaffirmed this principle in the following language: "Abandonment is the relinquishment, renunciation or surrender of a right. Its existence depends upon intention and acts evidencing intention to abandon. As hereinbefore pointed out, plaintiff continued to exercise no control over the business or the equipment after September 26, and several times thereafter advised others of the sale. If believed, the testimony of defendant's witness Clouse would suggest plaintiff had abandoned the sale. The trial court was in the best position to determine the weight and credit to be given this conflicting testimony. The law is clear that the act of relinquishment must be unequivocal and decisive. Kladivo v. Melberg, supra. Such does not appear in the case before us. Also see 12 Am. Jur., Contracts, section 442, page 1024."

In Steingut v. Guaranty Trust Co. of New York, 58 F. Supp. 623, at 637, affirmed in 2 Cir., 161 F.2d 571, the court said: "Defendant argues that as early as 1922 or 1923, the refugee directors who had caused the 1919 action to be instituted abandoned it. It is not necessary to detail the evidence. Suffice it to say that whatever support it contains for the claim of abandonment is entirely the product of surmise and speculation and altogether too flimsy to support so important a finding as abandonment of a claim the enforcement of which is pending in court."

We are wholly unable to see how the act of appellee in making statutory redemption from the sale under the prior mortgage can be construed to indicate an intent to abandon this action. The very fact that appellee credited only $22,000 of his judgment clearly indicates a contrary intent. It shows affirmatively his intent to continue to maintain this action for the purpose of collecting the balance of his judgment out of the rents and profits through the medium of the receivership and under the leases which the receiver had already made. No other construction can be put on these unequivocal acts.

III. The right of a foreclosing mortgagee to subject

the rents and profits from the real estate under a receivership clause in the mortgage to the payment of his debt is separate and distinct from his lien on the land itself. In Equitable Life Ins. Co. v. Rood, 205 Iowa 1273, at page 1280, 218 N.W. 42, page 45, it is said:

"The mortgage lien in this case, therefore, existed even after the debt had been reduced to judgment, and existed until the debt was paid or the security exhausted. The mortgage involved herein gave the appellant security of a twofold nature: the primary security against the real estate and the secondary security against the rents and profits."

In this same opinion (page 1279 of 205 Iowa) the court reaffirms the rule laid down in earlier Iowa cases, that this lien continues until the debt is paid, in the following language:

"In *Port v. Robbins*, 35 Iowa 208, we said: 'The law is well settled that a mortgage given to secure a *debt*, and not the note or bond or other *evidence* of it, remains a lien on the mortgaged property until the *debt* is paid; that no change in the form of the evidence or the mode or time of payment,—nothing short of *actual payment of the debt*, or an express release,—will operate to discharge the mortgage. The mortgage remains a lien until the *debt* it was given to secure is satisfied, and is not affected by a change of the note, or by giving a different instrument as evidence of the debt, or by a judgment at law on the note, merging the original evidence of indebtedness.' [Citing authorities]

"In *Sloan v. Rice*, 41 Iowa 465, we said: 'The doctrine is that the mortgage will remain a lien until the debt be paid, unless it be properly released. And the lien of the mortgage will follow the debt into the hands of an assignee, though a new note be given to him therefor. * * * From these rules it follows that, as long as the debt exists, whatever changes the notes may undergo, the mortgage lien presumptively exists.' "

This proposition is further emphasized in the case of Union Central Life Ins. Co. v. Eggers, 212 Iowa 1355, at page 1362, 237 N.W. 240, page 243, where the court set forth the appellant's theory as follows: "The theory of the appellant is that when he redeemed from the bid of $22.90 on the second execution sale, he divested the execution-plaintiff of his lien upon the

land and of all his rights under his mortgage, including his right to the rents, profits and possession pending the year of redemption."

In disposing of this contention, the court then said: "The appellant contends that the second mortgagee loses not only his judgment-lien against the land as such, but that he loses all other remedy, which he may have had under his mortgage. This is the vital distinction. We have held definitely that the right of a mortgagee under the receivership proviso of his mortgage to appropriate to the payment of his debt the rents and profits of the mortgaged land, is a right distinct from his judgment-lien upon the land itself and is 'additional' to such lien. Equitable Life Insurance Company v. Rood, 205 Iowa 1273, 1276. Pursuant to this authority, the second mortgagee did not lose the benefit of the receivership proviso when he extinguished his judgment-lien upon the land, as such."

It should be manifestly clear, therefore, that when appellant in this case exhausted his primary security by making his statutory redemption, he did not lose his right to have the unpaid balance of his lien paid from the rents and profits which were pledged as additional security. As said in the earlier case of Port v. Robbins, 35 Iowa 208, 209, which was quoted with approval in the Rood case, "nothing short of *actual payment of the debt*, or an express release, will operate to discharge the mortgage."

■ IV. This is not a situation where the doctrine of election of remedies would apply. Appellee had pursued his action to final determination. His debt was reduced to judgment, the mortgage foreclosed, and a receiver had been appointed. He then had two ways in which to exhaust his primary security, either by special execution sale or by statutory redemption. By making redemption he did not completely destroy his entire foreclosure action. He simply adopted one of the two ways provided by statute for exhausting his primary security.

■ Election of remedies applies only to proceedings prior to final determination of a case. As good a statement as any of the rule may be found in the case of Lindburg v. Engster, 220 Iowa 1073, at page 1084, 264 N.W. 31, 36, 116 A. L. R. 591, where we said:

"'Where a party has grounds to bring separate actions against different persons and a maintenance of one necessitates an allegation of a fact or the assumption of a position inconsistent with or repugnant to the maintenance of another, he is bound by his election and cannot proceed against the other. In other words, where a party has suffered actionable wrong, he will not be permitted to pursue inconsistent remedies against different persons.' 20 C. J. 17.

"The rule adopted in this state, as stated in Kearney Milling & Elevator Co. v. Union Pac. R. Co., 97 Iowa 719, 66 N.W. 1059, 1061, 59 Am. St. Rep. 434, and which rule has been adhered to ever since, is stated in the following language:

"'A man may not take two contradictory positions, and where he has a right to choose one of two modes of redress, and the two are so inconsistent that the assertion of one involves the negation or repudiation of the other, his deliberate and settled choice of one, with knowledge, or means of knowledge, of such facts as would authorize a resort to each, will preclude him thereafter from going back and electing again.' "

In making his redemption appellee was not electing a remedy, he was simply adopting one means of exhausting his primary security. As a matter of fact, as stated by Judge McClain in Tukey v. Reinholdt, 130 N.W. 727, 728, it is one method of foreclosure: "In such a case as this the right to redeem is incident to the right to foreclose; indeed it is the method for effecting foreclosure and subjecting to the satisfaction of the junior mortgage so much of the value of the property as is left after satisfying the senior mortgage."

As stated in Kladivo v. Melberg, 210 Iowa 306, 307, 308, 227 N.W. 833, the act of relinquishment must be unequivocal and decisive. We there said: "Abandonment is the relinquishment, renunciation, or surrender of a right. Its existence depends on intention and act evidencing intention to abandon. The act of relinquishing must be unequivocal and decisive."

V. There is another feature to this case which appears to be fatal to appellant's contention. The order of May 3, 1957, and the decree of May 29, 1957, appointed the receiver and directed him to take possession of the mortgaged premises; fixed

the term of the receivership and directed the receiver to collect the rents, and made provision for the distribution of the funds thus collected. No appeal was taken from either the order or the decree and they now stand as final.

The case of Union Central Life Ins. Co. v. Eggers, supra, seems to have settled this proposition. In that case a first mortgage was foreclosed and the land was bid in for the full amount of the debt. A second mortgage was also foreclosed in which a receiver was appointed. The land was sold at special execution sale and bid by the mortgagee for $22.90, the amount of the costs. Redemption was made and it was claimed this redemption operated as a matter of law to discharge the rents and profits from the operation of the mortgage clause and from all liability for the deficiency judgment. A petition was filed to terminate the receivership and upon hearing was overruled. The trial court in overruling this petition said in part at page 1360 of 212 Iowa, page 242 of 237 N.W.:

" 'The judgment and decree on the issues of the cross-petition determine that a receiver should be and was appointed. It determined of what this receiver should and what he should not take possession. It authorized and empowered. him to lease the premises from March 1, 1931, to October 25, 1931, and to apply the rentals on any deficiency judgment that there might be on the execution sale for which it provided. It decreed that debtors were to have possession of the premises until March 1, 1931, and were at that time to surrender possession to the receiver or to his lessee. These parties were all in court, represented by counsel. They excepted to the judgment and decree. But, in the judgment of the undersigned, whether right or wrong, the judgment therein entered was and is final and conclusive until set aside on appeal, and this Judge in this hearing is not at liberty to reverse, modify or ignore the judgment and decree thus entered.' "

An appeal from this order was taken and the action of the trial court was affirmed. In affirming, we said (on same pages as above):

"In appealing from this order, the appellant has virtually no standing ground. The dismissal of the petition by Judge

Hutchison was predicated solely upon the ground that the period of the receivership was covered by the terms of the decree and therefore adjudicated. This ground was manifestly true. The foreclosure decree did fix the period of the receivership for the purpose of collecting the deficiency judgment as extending from March 1 to October 25, 1931. The order of Judge Hutchison simply recognized the existing decree according to its own terms. The order was therefore proper even though the decree of Judge Klinker should be deemed erroneous."

Upon the authority of this decision the lower court was correct in overruling appellant's motion, as the matter was finally adjudicated by the order and decree above-mentioned, which could not be attacked by the motion under consideration.

VI. This is a case in equity and the fundamental principles of equity should govern. The relief being asked by appellant hardly appeals to the conscience of a court of equity. The receivership clause in the mortgage pledges the rents and profits as security for the payment of his obligation to appellee in case foreclosure is brought. Foreclosure was brought and a receiver was appointed. He now seeks to terminate the receivership and regain the rents and profits which were pledged, notwithstanding the fact that there is a balance of $5902.86 of the debt unpaid. And this claim is based upon the technical theory that because no foreclosure sale was held, the rents and profits were freed from the pledge. There is no question but what a deficiency exists. Whether that deficiency was established by redemption proceedings or by sale does not alter the equities of the situation. In equity and good conscience appellee is entitled to retain the security which was given to him.

What a court of equity should do in such a situation is well established. In Durkin v. Lovknit Mfg. Co., Inc., 5 Cir., 208 F.2d 665, at 667, it is said: "A court of equity is a court of conscience. The function of the chancellor is, upon equitable considerations, to winnow the wheat from the straw, and his decree will not be set aside on appeal unless, as is not the case here, it is made to appear that it is not equitable but inequitable to let it stand."

In another case, Hunt v. Armour Co., 90 F. Supp. 767, at

773, the same thought is expressed in the following language: "In my view a court of equity cannot lend itself to a theory which would defeat equity."

We, therefore, feel that, upon general equitable principles, there is no reason for reversing the decision of the trial court.

VII. The conclusions which we have reached dispose of that part of the motion relating to the taxation of costs, which in accordance with the provisions of the order and decree should be paid out of the receivership proceeds.

The order of the trial court in overruling the motion in its entirety is, therefore, affirmed.—Affirmed.

All Justices concur.