**J.L. MOAD, Plaintiff–Appellee,**

v.

**Jerome NEILL, a/k/a Jerome W. Neill, Defendant–Appellant,**

**The Federal Land Bank of Omaha, The United States of America, State Bank and Trust, Farmers Cooperative Company, and Larry Bryceson, Defendants.**

**The FEDERAL LAND BANK OF OMAHA, Cross–Petitioner Third–Party Plaintiff–Appellee,**

v.

**Jerome NEILL a/k/a Jerome W. Neill, Cross–Defendant–Appellant,**

**The Federal Land Bank of Omaha, The United States of America, State Bank and Trust, Farmers Cooperative Company, and Larry Bryceson, Cross–Defendants,**

**Sharon Neill, Third–Party Defendant.**

No. 89–508.

Court of Appeals of Iowa.

Nov. 27, 1989.

Richard A. Rowland, Omaha, Neb., and Raymond Pogge of Pogge, Root, Fleming & Tinley, Council Bluffs, for appellant.

Steven H. Krohn of Smith, Peterson, Beckman & Willson, Council Bluffs, for appellee Federal Land Bank.

Heard by SCHLEGEL, P.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

The cross-defendant-appellant, Jerome Neill, as the mortgagor, appeals the decision of the district court which directed the receiver to pay the rents collected during the redemption period to the Federal Land Bank, as mortgagee and purchaser at sheriff's sale, to apply on its deficiency judgment. We affirm.

### Factual Background

The cross-defendant-appellant, Jerome Neill, owned certain real estate that included farmland in Harrison County, Iowa. In 1977, he borrowed money from the Federal Land Bank (FLB), and as security for this loan, he gave FLB a mortgage on his land. Neill defaulted and in December of 1985 foreclosure decree followed. No appeal from that decree was taken.

The real estate which was the subject of Neill's mortgage was sold at sheriff's sale to FLB as the highest bidder. The bid at this sale satisfied only a portion of FLB's judgment. The deficiency was in excess of $100,000.

The foreclosure decree provided for the appointment of a receiver, who in turn was authorized to collect and distribute the rents and profits from the real estate and to make distribution in accordance with Iowa law. The receiver did collect rent for the 1986 and 1987 crop years, and the balance after disbursements for taxes, insurance, postage, and fees equals almost $30,000.

Neill filed a chapter 12 petition in bankruptcy court in December of 1986. This petition was dismissed in March of 1988. In May of 1988, Neill filed a chapter 7 petition. An order of discharge was entered by the bankruptcy court in August of 1988 for the full discharge of Neill's debts.

During the course of the chapter 12 bankruptcy proceedings, FLB agreed not to record any deed to Neill's land until its motion to dismiss Neill's chapter 12 petition was heard and decided by the court. Neill contends that this provision constitutes an effective agreement to extend the redemption period to March 10, 1988, the date Neill's chapter 12 bankruptcy petition was by order of court dismissed.[1] The FLB does not argue to the contrary. Therefore, for the purposes of this opinion, we accept appellant's interpretation of that agreement.

The receiver applied to the court for directions as to the method of distribution of the funds on hand. FLB claims they are entitled to the funds because of their deficiency judgment; and Neill, for reasons hereafter set forth, claims he is entitled to the funds for they were collected during his redemption period.

The trial court held that the funds should be paid to FLB to apply on their deficiency judgment. Neill on appeal asserts the trial court erred in holding the mortgagee was entitled to the net rents from the property during the period of redemption because (1) such holding is contrary to the statutes and public policy of the State of Iowa, (2) the mortgage is ambiguous and unclear in its language as to the time period to which referred, and (3) he had received a dis-

---

**1.** We are cognizant of the United States District Court's ruling of October 23, 1987, which lends strength to the appellant's argument.

charge of his debts through bankruptcy. We affirm the trial court.

## I

### Rents Collected During Redemption

■ Neill first asserts he is entitled to the net rental proceeds during the redemption period on the basis of his statutory right of redemption. He relies on section 628.3 of the Iowa Code, which provides in pertinent part:

The debtor may redeem real property at any time within one year from the day of sale, and will, in the meantime, be entitled to the possession thereof; . . . .

Iowa Code § 628.3 (1987).

It is clear under section 628.3, in the absence of a stipulation to the contrary, that Neill is entitled to possession of the mortgaged land during the redemption period.[2] In addition, if Neill, as the mortgagor, is entitled to possession, it follows that he is also entitled to the rents and profits from the mortgaged premises until the expiration of the redemption period. *See Starits v. Avery*, 204 Iowa 401, 403, 213 N.W. 769, 771 (1927). As the court stated in *Starits:*

A mortgagor's right of possession during his year of redemption is a statutory privilege reserved to the debtor. It is a personal privilege incident to ownership of land, and, as said in *Sayre v. Vander-Voort*, 200 Iowa 990, 205 N.W. 760, 42 A.L.R. 880, is not "an estate which can be carved out of the larger estate at the will of a creditor."

*Starits*, 204 Iowa at 404–405, 213 N.W. at 771.

But here, Neill, by virtue of the mortgage in question, not only mortgaged and conveyed his land to FLB for the $425,000 loan, he also conveyed to FLB:

all of the right, title, and interest (now owned or hereafter acquired) of the mortgagors in said property, including all buildings, improvements, fixtures, or appurtenances thereon or hereafter placed thereon; . . . the tenements, here-

ditaments, and appurtenances thereto and the rents, issues, crops, and profits arising from said land.

In addition, the mortgage further provided:

That in the event action is brought to foreclose this mortgage, the mortgagee shall be entitled to immediate possession of the mortgaged premises, and the court may appoint a receiver to take possession of said premises, with the usual powers of receivers in like cases.

The trial court, in its foreclosure decree, appointed a receiver to take possession of the premises and to collect the rents and profits therefrom. That decree further provided:

It is further ordered, adjudged, and decreed by the court that the lien, claim, title or interest of the defendants [Neill and others] upon said mortgaged premises is junior, inferior, and subsequent to the lien of the third-party plaintiff's [FLB] said mortgage thereon, and that the rights and equities of the third-party plaintiff in and to said real estate and the lien of the third-party plaintiff's [FLB] said mortgage thereon are prior, superior, and paramount to any of the right, claims, or equities therein of each and all of the defendants in this case.

The right of the receiver to collect the rents and profits was not and is not challenged on this appeal. It is only the method of distribution of the rents that Neill challenges.

The appellant cites us to *Starits* as authority for his position that he is entitled to the rentals during the redemption period. But in *Starits*, the mortgage did not give the mortgagee the right to possession before the termination of redemption rights, nor was there a transfer of the rentals as is the case here. 204 Iowa at 402, 213 N.W. at 770. It is important to note that *Starits* did say:

"It follows that a mortgage which does not, in terms, give to the mortgagee the right of possession before sale and the termination of the right of redemption,

---

**2.** See also Iowa Code section 557.14, which provides: "In absence of a stipulation to the contrary, the mortgagor of real estate retains legal title and right of possession thereto."

nor pledge the rents and profits, creates no lien upon nor interest in the right of possession given by the statute, nor upon the revenue which accrues from it."

*Id.* at 402, 213 N.W. at 771 (quoting *American Inv. Co. v. Farrar,* 87 Iowa 437, 441–42, 54 N.W. 361, 363 (1893)).

It is the settled law in this state that where the owner of land as the mortgagor executes to his lender a mortgage and that mortgage not only conveys the land, but also conveys the rent, the mortgagor has pledged the rent as primary security for his indebtedness, and the lender's lien on the rents from the encumbered land as between the mortgagor and mortgagee takes effect from the date of the execution of the mortgage. *Federal Land Bank of Omaha v. Lower,* 421 N.W.2d 126, 129 (Iowa 1988). Thus, in the case at bar, by virtue of the mortgage, the lien of FLB as it relates to Neill[3] took effect on the date of the execution of the mortgage, to-wit, September 28, 1977.

We recognize that the Iowa legislature has manifested a preference for "protection" over "credit" by adopting judicial foreclosure and statutory redemption in 1860 and by retaining them during the following century and a quarter. See Bauer, Judicial Foreclosure and Statutory Redemption: The Soundness of Iowa's Traditional Preference for Protection Over Credit, 71 Iowa L.Rev. 1, 81 (1985). One significant reason for preferring protection over credit is to give the mortgagor the income from his land during the redemption period to enable him to have additional income to redeem. See Bauer, Statutory Redemption Reconsidered: The Operation of Iowa's Redemption Statute in Two Counties Between 1881 and 1980, 70 Iowa L.Rev. 343, 403 (1985). But this does not preclude the mortgagor from stipulating away his right to possession and his right to rents and profits. Such an agreement in a mortgage is neither inconsistent with our statutes nor offensive to public policy.

The right to redeem is statutory and not constitutional. *Farmers Trust & Sav. Bank v. Manning,* 359 N.W.2d 461, 463 (Iowa 1984). There is nothing in the law which forbids the disposition of redemption or possession rights. These rights can be disposed of separately. *See Federal Land Bank of Omaha v. Hayworth,* 414 N.W.2d 650, 654 (Iowa App. 1987) (Sackett, J., specially concurring).

We, accordingly, reject the appellant's first assignment of error.

## II

### *Ambiguity in the Mortgage*

We are unable to find any ambiguity in the mortgage. The mortgage clearly provides that in the event of foreclosure, FLB is entitled to immediate possession of the mortgage premises and to the appointment of a receiver. The mortgage also conveyed to the mortgagee "the rents, issues, crops, and profits arising from said lands." The appellant recognizes these provisions.

However, the appellant argues that the provision of the mortgage which conveys the rent should apply to those rentals arising "as of the default and date of foreclosure" and not to the rents arising later during the period of redemption. We are unable to accept this interpretation.

As we pointed out earlier, FLB's lien took effect on the date of the execution of the mortgage. There is nothing in the mortgage which limits the lien on the rents to any period. Courts should not read into an instrument a provision that does not reflect the agreement of the parties. There is nothing in this record which supports the limitation as argued by the appellant. In this respect, we note that in the *Federal Land Bank of Omaha v. Lower* case, the supreme court affirmed the district court and the court of appeals, which ordered the mortgagor to account to the receiver for rents collected between the

---

**3.** We need not here decide on how a lien on real estate rents should be perfected. The Iowa Supreme Court has long held that "recording is not a part of the execution, and an unrecorded instrument is valid as between the parties to it."

*Federal Land Bank of Omaha v. Lower,* 421 N.W.2d 126, 129 (Iowa 1986) (quoting *State v. Eagle Petroleum Co.,* 261 Iowa 58, 68, 153 N.W.2d 115, 121 (1967)).

date the foreclosure decree was entered and a receiver appointed. 421 N.W.2d at 129. In that case, the mortgagor argued that he should not have to account for rents paid before the appointment of a receiver.

### III

#### *The Effect of Bankruptcy*

The appellant next asserts that his chapter 7 discharge which issued after the foreclosure of his land precluded any further action by FLB against him or his remaining property. We again must reject appellant's argument for the reason hereafter stated.

As previously mentioned, under *Lower*, FLB had a present lien on the rents, issues, and profits from the farm. Without objections from the appellant, the rental funds were collected by the receiver. Those funds were held by the receiver as an officer of the court in custodia legis. *Sioux Falls Broadcasting Ass'n v. Henry Field Co.*, 226 Iowa 874, 878, 285 N.W. 155, 157 (1939). The Iowa Supreme Court, in *Union Cent. Life Ins. Co. v. Eggers*, 212 Iowa 1355, 1363, 237 N.W. 240, 244 (1931), stated:

> We have held definitely that the right of a mortgagee under the receivership proviso of his mortgage, to appropriate to the payment of his debt the rents and profits of the mortgaged land, is a right distinct from his judgment lien upon the land itself and is "additional" to such lien.

As it relates to rents and profits, the Iowa Supreme Court, in *Farmers Sav. Bank v. Pomeroy*, 211 Iowa 337, 338, 233 N.W. 488, 489 (1930), stated:

> The right of the plaintiff in a foreclosure action, when such is permissible, to the appointment of a receiver, is a part of the remedy in equity for the satisfaction of his claim. The receiver is not appointed for the benefit of creditors, but as an aid to the mortgagee in carrying out an appropriate remedy in equity.

From the foregoing, we are able to discern that the appointment of a receiver to collect the rents and to apply them on the deficiency judgment is a part of the remedy utilized by the mortgagee to enforce its judgment. This remedy is invoked simultaneously with the entry of the foreclosure decree. *See Lincoln Joint Stock Land Bank of Lincoln v. Bundt*, 234 Iowa 1011, 1017, 14 N.W.2d 865, 868 (1944).

■ It is true that a deficiency judgment is divested of its lien upon the land as such. *Eggers*, 212 Iowa at 1363, 237 N.W. at 244. However, the right of the mortgagee to the rents under the circumstances here, was neither defeated nor diminished by the fact that it reduced its claim to a deficiency judgment. *See id.* at 1363, 237 N.W. at 244. The lien against the rent continued.

■ We turn next to the appellant's argument that since his debt was discharged in bankruptcy, the FLB is not entitled to the rents. We find merit in this contention of the appellant insofar as *Neill's personal liability* for the indebtedness is concerned. *See* 11 U.S.C. § 524(a). However, the discharge in bankruptcy does not affect or prevent enforcement of valid liens existing prior to discharge. *See Noble v. Yingling*, 29 B.R. 998, 1001 (Bankr.D.Del.1983); *In re Dickinson*, 24 B.R. 547, 550 (Bankr.S.D. Cal.1982); *In re Sillani*, 9 B.R. 188, 189 (Bankr.S.D.Fla.1981); *First State Bank v. Zoss*, 312 N.W.2d 127 (S.D.1981).

In *Webber v. King*, 205 Iowa 612, 618, 218 N.W. 282, 284 (1928), the Iowa Supreme Court held that a pledge of rents, issues, and profits under a mortgage was not dissolved by bankruptcy except as it imposed a personal liability as distinguished from the encumbrance or pledge. The Iowa Supreme Court stated further in the *Webber* opinion that because the lien on the rents provided by the mortgage was in effect, the right of the mortgagee to those rents was not affected by the discharge in bankruptcy. *See id.*, 218 N.W.2d at 284.

■ The appellant seeks to distinguish *Webber* by arguing that the bankruptcy proceedings in *Webber* occurred prior to foreclosure, not after as in the present case. Here, the chapter 7 bankruptcy of Neill was not filed until May 17, 1988. The

discharge was not entered until August of 1988. The rents were in existence and were collected and subject to FLB's lien at the time the bankruptcy was filed. Insofar as the bankruptcy proceedings are concerned, it is the date of the existence of the lien for rentals that is determinative.

We conclude that the district court was correct in determining that FLB's lien on the rents from the subject premises preexisted the filing of Neill's bankruptcy, and their lien was not affected by Neill's discharge in bankruptcy, but remained an effective lien.

We affirm the trial court in all respects.

AFFIRMED.