**PRESIDENTIAL REALTY CORPORATION,**
Appellee,

v.

**BRIDGEWOOD REALTY INVESTORS,**
Appellant,

**Norwest Bank Nebraska, N.A., formerly Center Bank, Appellee,**

and

**Peppertree Apartments Co., an Iowa Corporation; Pine–Bridge Green Limited Partnership; Aksarben Pipe and Sewer Cleaning Co.; and Pottawattamie County, Iowa, Defendants.**

No. 92–37.

Supreme Court of Iowa.

April 21, 1993.

Rehearing Denied May 21, 1993.

Jack E. Ruesch of Telpner, Smith, Sawatzke & Ruesch, Council Bluffs, for appellant.

Deborah L. Petersen of Perkins, Sacks, Hannan, Reilly & Petersen, Council Bluffs, for appellee Presidential Realty Corp.

Donald J. Pavelka, Jr., of Hansen, Engles & Locher, P.C., Omaha, NE, for appellee Norwest Bank Nebraska, N.A.

Considered by LARSON, P.J., and SCHULTZ, CARTER, LAVORATO and ANDREASEN, JJ.

ANDREASEN, Justice.

Mortgagor appeals from district court order requiring receiver to pay all real estate taxes accruing prior to July 31, 1991, from receivership assets and to pay all remaining funds to clerk to allow senior mortgage holder to enforce its rights. Mortgagor contends the district court erred in ordering the payment of real estate taxes not yet delinquent. The mortgagor also contends the court erred in ordering the remaining funds to be paid to the clerk of court for the benefit of the unforeclosed senior mortgage holder, who waived any deficiency judgment. Finding no error, we affirm.

## I. *Background.*

On December 18, 1972, Peppertree Apartment Company (Peppertree) executed and delivered a first mortgage to Center Bank n/k/a Norwest Bank Nebraska N.A. (Norwest), which contained an assignment of rents. A separate assignment of rents in favor of Norwest was also simultaneously executed and delivered by Peppertree. The mortgage property, a 201 unit apartment complex, was subsequently purchased by Presidential Realty Corporation (Presidential), who sold it to Pine–Bridge Green Limited Partnership (Pine–Bridge), who in turn sold it in 1984 to Bridgewood Realty Investors (Bridgewood). Presidential, Pine–Bridge and Bridgewood all assumed the Norwest first mortgage.

After default by Bridgewood, Presidential filed a petition for foreclosure of its purchase money second mortgage on the property and an application for the appointment of a receiver. On August 31, 1989, the application was granted by the district court and Douglas Pugh was appointed to receive the rents and to manage the apartments. Norwest filed an answer, counterclaim and cross-petition seeking to foreclose its mortgage. Both Presidential and Norwest filed motions for summary judgment.

On December 21, 1990, a judgment and decree of foreclosure was entered. Because Presidential had waived its right to a deficiency judgment, the redemption period was reduced to six months. Iowa Code § 628.28 (1989). The decree of foreclosure, entered with the consent of all parties, did not affect the rights of Norwest, but merely foreclosed the other parties' interests subject to Norwest's senior interest. Under the decree, Norwest retained all rights and remedies, including foreclosure of its first mortgage. The decree also incorporated a stipulation regarding financing and options between Presidential and Norwest. The decree specifically provided the receiver would remain in possession of the property until released by the court. The decree ordered the sale of the mortgaged property.

The sheriff's sale was conducted on January 31, 1991, at which time Presidential successfully bid in the amount owed under its mortgage plus costs and interest. Bridgewood did not redeem the property during the redemption period that ended July 31, 1991.

However, Bridgewood did file on July 31, 1991, an application requesting a court order terminating the receivership, discharging the receiver, and disbursing receivership funds of approximately $275,328. Bridgewood claimed it was entitled to all receivership funds subject only to disbursements allowed or directed by the court. Bridgewood urged no real estate taxes should be paid from the receivership funds.

Both Norwest and Presidential resisted Bridgewood's application. Norwest claimed it had a right superior to Bridgewood in the funds held by the receiver by virtue of the assignment of rents granted to it on December 18, 1972, and preserved by the foreclosure decree. Presidential claimed that Bridgewood lost all rights in the receivership proceeds because it had failed to redeem, that Bridgewood had no right to possession during the redemption period, and that the judgment in rem allowed Presidential to have judgment against all collateral, including the rents and profits.

The parties stipulated the real estate taxes on the property totaled $108,030 per year. The first installment of $54,015 became delinquent on October 1, 1991, the second half installment which is due in the amount of $54,015 became delinquent on April 1, 1992. The taxes accrued against the property for the period July 1, 1991, through July 31, 1991, would be one-twelfth of the total taxes per year or a total amount of $9,002.50. The district court ordered the receiver to pay all routine rental expenses including all real estate taxes accruing prior to July 31, 1991. This included payment of the taxes that became due on July 1, 1991, although not delinquent.

The court found Norwest had an absolute assignment of rents and was not required to foreclose its mortgage and seek appointment of its own receiver to have a lien on the rents in the receiver's possession. The court terminated the receivership and ordered all remaining funds in the hands of the receiver paid into the clerk of court to allow Norwest to enforce its rights under its assignment of rents or real estate mortgage. Bridgewood appealed.

The two issues raised in this appeal are (1) should the receiver pay real estate taxes accruing prior to July 31, 1991, and (2) who should receive any remaining surplus rents.

II. *Real estate taxes.*

Iowa Code section 654.14 provides, in part, that a receiver appointed to take charge of real estate in an action to foreclose a real estate mortgage shall apply the rents and profits derived from the real estate to "the payment of taxes due or

becoming due during said receivership." *See also* Iowa Code § 680.7 (claims entitled to priority in court appointed receiverships).

In Iowa, real estate taxes for the previous fiscal year become due on the first day of the current fiscal year; July 1. *See* Iowa Code § 445.36. The taxes may, however, be paid in installments, with said installments not becoming delinquent until October 1 and April 1. *See id.;* Iowa Code § 445.37.

In other words, the taxes due July 1, 1991, were for the 1990–91 fiscal year, when the real estate was in the possession of Bridgewood and the receiver. The district court was correct in ordering the receiver to pay all real estate taxes accruing prior to July 31, 1991.

### III. *Surplus rents.*

Ordinarily, a debtor is entitled to possession of real property during the redemption period, and, if entitled to possession of the real property, the debtor is also entitled to the rents generated from the property. Iowa Code § 628.3; *Community State Bank, Paton v. Cottington*, 444 N.W.2d 484, 486 (Iowa 1989); *Moad v. Neill*, 451 N.W.2d 4, 7 (Iowa App.1989). A debtor may also be entitled to rents held by a receiver even though dispossessed by virtue of the receivership. *See Federal Land Bank of Omaha v. Heeren*, 398 N.W.2d 839, 844 (Iowa 1987). A mortgagee has a lien on rents from the date of execution of the mortgage if the mortgage conveys the rents in the granting clause rather than merely pledging them as collateral or as additional security in the event of a default. *Federal Land Bank of Omaha v. Lower*, 421 N.W.2d 126, 128 (Iowa 1988).

Here, the rents were conveyed to Norwest in a separately recorded assignment of rents dated December 18, 1972. This assignment provided the mortgagor:

> does hereby sell, assign and transfer unto the mortgagee all the rents, issues and profits now due and which may hereafter become due ... it being the intention hereby to establish an absolute transfer and assignment of all the said leases and agreements....

Norwest's lien on the rents attached upon the execution of this assignment. Thus, Norwest was not required to foreclose its mortgage on the realty and seek appointment of its own receiver to have a lien on the rents in the receiver's possession.

Bridgewood argues that Norwest gave up its right to any rents when it waived its right to a deficiency judgment. We disagree. This waiver only relates to a personal judgment against the defendants of the cross-petition. Norwest bargained for, and received, an absolute assignment of rents. The real estate remains subject to its first mortgage. The debt secured has not been satisfied. While Norwest may not look beyond its security to satisfy the debt, it can look to the real estate and rents. Norwest is entitled to exercise its rights against the surplus rents irrespective of its waiver of deficiency.

Accordingly, we affirm the district court decision.

AFFIRMED.