Douglas **HOLLIDAY,** Wendel Holliday, and Janet Holliday, Plaintiffs,

v.

**DeBRUCE GRAIN, INC.,** Defendant.

No. 4:08–cv–00147.

United States District Court,
S.D. Iowa,
Central Division.

Aug. 25, 2009.

Guy R. Cook, Laura Nicole Martino, Grefe & Sidney PLC, Des Moines, IA, Mark M. Iba, Bradley J. Yeretsky, Stinson Morrison Hecker LLP, Kansas City, MO, for Defendant.

Michael P. Mallaney, Hudson Mallaney & Shindler PC, West Des Moines, IA.

ROBERT W. PRATT, Chief Judge.

Before the Court is Defendant DeBruce Grain, Inc.'s ("DeBruce") Motion for Partial Summary Judgment, filed on May 1, 2009. Clerk's No. 26. Plaintiffs Douglas Holliday, Wendel Holliday, and Janet Holliday (collectively "the Hollidays") filed their Response to Defendant's Motion for Summary Judgment on June 12, 2009. Clerk's No. 39. DeBruce filed its Reply on June 22, 2009. Clerk's No. 41. The matter is fully submitted.

## I. FACTUAL AND PROCEDURAL BACKGROUND [1]

This controversy revolves around a parcel of land on which a grain elevator

---

1. DeBruce does not dispute the facts asserted by the Hollidays for the purposes of the Motion for Summary Judgment. Clerk's No. 42 at 1, n. 1. Likewise, the Hollidays have not refuted the facts stated by DeBruce. Local Rule 56(b)(2)-(3) requires a party opposing summary judgment to submit "[a] response to the statement of material facts in which the resisting party expressly admits, denies, or qualifies each of the moving party's numbered statements of fact," and "[a separate] state-

ment of additional material facts that the resisting party contends preclude summary judgment...." Rather than filing two separate documents, as provided in the Local Rules, the Hollidays submitted a single statement of facts, "Plaintiffs' Statement of Undisputed Facts in Resistance to Summary Judgment" (Clerk's No. 39–1), reiterating some facts set forth by DeBruce and asserting several additional facts. "The failure to respond ... to an individual statement of material fact

stands in Union County, Iowa (hereinafter "grain elevator"). On September 10, 1998, the Hollidays executed a mortgage with First National Bank in Creston (hereinafter "the Bank") on five parcels of land in Creston, Union County, Iowa, including the grain elevator. Def.'s Statement of Uncontroverted Material Facts (hereinafter "Def.'s Statement of Facts") ¶ 1. At some point in time thereafter, First National Bank filed a petition in the Iowa District Court for Union County seeking foreclosure of the mortgage (Iowa Case No. EQCV015098). *Id.* ¶ 3; *see also* Def.'s App. at 10. During the foreclosure proceedings, two receivers were appointed, consecutive to one another, to take possession and control of the mortgaged properties, by request of the Bank. Def.'s Statement of Facts ¶¶ 4–7. The second receiver executed leases on at least two of the mortgaged parcels, one wherein the grain elevator was leased to DeBruce, and another wherein a separate parcel of farmland was leased to an individual not party to this action. *Id.* ¶¶ 7, 11. DeBruce's lease of the grain elevator commenced on September 21, 2006 and was set to expire on August 30, 2007. *Id.* ¶ 7.

On July 10, 2007, while DeBruce was in possession of the grain elevator under the terms of the lease, it purchased the grain elevator at the sheriff's foreclosure sale for a sum which satisfied the indebtedness plus taxable interest and costs. *Id.* ¶ 8. A Sheriff's Certificate of Purchase was issued to DeBruce which provided: "Unless redemption is made, one year, said purchaser(s), their heirs, or assigns will be entitled to a deed conveying all right, title and interest of said defendants in and to said real estate." Pls.' Statement of Undisputed Facts in Resistance to Summary Judgment (hereinafter "Pls.' Statement of Facts") ¶ 3; Pls.' App., Ex. 1.[2] On August 27, 2007, the Receiver filed a Final Report with the Iowa District Court for Union County to terminate the receivership (hereinafter "Final Report"), noting that "the elevator has been sold at the sheriff's sale and has been acquired by DeBruce Grain." Def.'s Statement of Facts ¶¶ 9–10. The Receiver did not send a Notice of Termination to DeBruce, but did send the tenants of the other leased parcel notice that the land they were renting had been acquired and informing them their lease would be terminated at the end of its term in March 2008. *Id.* ¶ 11; Def.'s App. at 34. The Iowa District Court for Union County issued an Order on September 21, 2007, approving the Final Report, discharging the Receiver, and terminating the receivership. Def.'s Statement of Facts ¶ 12. The Order reports that the Hollidays and the Bank approved the Final Report and the Order and that the Bank was paid off as a result of the sheriff's sale, but it does not comment on who was in possession of or who had a right to possess the grain elevator during the period of redemption. Def.'s App. at 55–60.

After both DeBruce's lease expired on August 30, 2007 and the receivership was terminated on September 21, 2007, DeBruce retained possession of the grain

constitutes an admission of that fact." Local Rule 56(e). Accordingly, the Court will treat each of the facts listed in DeBruce's Statement of Uncontroverted Material Facts as admitted.

2. Local Rule 56(b) and (e) requires that the resisting party provide an appendix, with a table of contents and consecutive numbering, and that "[a]ll references to supporting documents in a brief, a statement of material fact, or a resistance or reply to a statement of material fact must be to a specific page number in an appendix." Instead, the Hollidays filed a series of exhibits attached to their Statement of Fact, and make general references to those exhibits. In future filings, counsel should consult and comply with the Local Rules.

elevator, despite several requests by the Hollidays that DeBruce vacate the grain elevator.[3] Pls.' Statement of Facts ¶ 9. On October 30, 2007, the Hollidays filed an action for forcible entry and detainer against DeBruce. *Id.* ¶ 12. The Union County magistrate judge dismissed the forcible entry and detainer action on November 5, 2007 for lack of jurisdiction, citing the Iowa District Court for Union County's retention of jurisdiction over the parties and the mortgaged properties. Def.'s Statement of Facts ¶¶ 14–15; Def.'s App. at 62.

DeBruce maintained its right to possess the grain elevator, but on November 12, 2007, it notified the Hollidays that it would be terminating its lease effective December 31, 2007. Pls.' Statement of Facts ¶ 13; Pls.' App., Ex. 4. DeBruce subsequently intervened in the foreclosure proceedings to resolve the dispute regarding who had the right to possess the grain elevator during the redemption period. Def.'s Statement of Facts ¶ 16. On December 7, 2007, the Iowa District Court for Union County granted the Hollidays' motion to continue and ordered "that [DeBruce is] entitled to and shall retain possession of the property until the time of [the January 25, 2009 hearing]." *Id.*; Def.'s App. at 63.

On March 28, 2008, the Hollidays initiated the present action by filing a petition in the Iowa District Court for Union County alleging that because DeBruce refused to yield possession of the grain elevator, the Hollidays were unable to consummate the sale of the grain elevator to a third party and that DeBruce had not properly maintained the grain elevator. Def.'s App. at 22–27. The Hollidays sought damages, both compensatory and punitive, as well as injunctive relief directing DeBruce to place

the grain elevator in the condition it was in prior to the expired lease. *Id.* DeBruce removed the action to United States District Court, Southern District of Iowa, on April 11, 2008. Clerk's No. 1.

At some point in the spring of 2008, DeBruce sent the Hollidays the keys to the grain elevator and, on May 7, 2008, the Hollidays redeemed the grain elevator. Pls.' Statement of Facts ¶¶ 5, 10. The Hollidays subsequently amended their Complaint against DeBruce on June 1, 2009 to add a claim for unjust enrichment (Clerk's No. 36), and have represented to DeBruce that they are now seeking compensation for DeBruce's occupation and use of the grain elevator after the expiration of the lease (*see* Clerk's Nos. 23, 26). DeBruce moves for partial summary judgment on the Hollidays' claims for: (1) one year's rent for the period that DeBruce occupied the grain elevator after the lease had expired; (2) double rent under Iowa Code § 562.2 for willfully holding over after being given notice to quit; (3) punitive damages for willful and wanton conduct; (4) attorney's fees; and (5) damages for the loss of an alleged sale of the grain elevator.

## II. STANDARD OF REVIEW

"A party against whom relief is sought may move at any time … for summary judgment on all or part of the claim." Fed.R.Civ.P. 56(b). "[S]ummary judgment is an extreme remedy, and one which is not to be granted unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *Robert Johnson Grain Co. v. Chem. Interchange Co.,* 541 F.2d 207,

---

**3.** DeBruce admits that the Hollidays' requested it to vacate the grain elevator solely for the purpose of summary judgment, but reserves the right to dispute this fact at trial. Def.'s Statement of Facts at 3 n. 1.

209 (8th Cir.1976) (citing *Windsor v. Bethesda Gen. Hosp.*, 523 F.2d 891, 893 n. 5 (8th Cir.1975)). The purpose of the rule is not "to cut litigants off from their right of trial by jury if they really have issues to try," *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (quoting *Sartor v. Ark. Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)), but to avoid "useless, expensive and time-consuming trials where there is actually no genuine, factual issue remaining to be tried," *Anderson v. Viking Pump Div., Houdaille Indus., Inc.*, 545 F.2d 1127, 1129 (8th Cir.1976) (citing *Lyons v. Bd. of Educ.*, 523 F.2d 340, 347 (8th Cir.1975)). The plain language of Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The precise standard for granting summary judgment is well-established and oft-repeated: summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994). The court does not weigh the evidence nor make credibility determinations, rather the court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Wilson v. Myers*, 823 F.2d 253, 256 (8th Cir.1987) ("Summary judgment is not designed to weed out dubious claims, but to eliminate those claims with no basis in material fact.") (citing *Weight Watchers of Quebec, Ltd. v. Weight Watchers Int'l, Inc.*, 398 F.Supp. 1047, 1055 (E.D.N.Y. 1975)).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has carried its burden, the nonmoving party must go beyond the pleadings and designate specific facts by affidavits or by the depositions, answers to interrogatories, and admissions on file, showing that there is a genuine issue for trial. *See* Fed. R.Civ.P. 56(c), (e); *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat a motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505. An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *See id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material. . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

## III. LAW AND ANALYSIS

### A. *Right to Possession and Rents during the Period of Redemption*

To recover damages resulting from De-Bruce's possession of the grain elevator, under either the tort theory of trespass to land or the doctrine of unjust enrichment,

the Hollidays must establish their possessory right in the property. *See Robert's River Rides, Inc. v. Steamboat Dev. Corp.,* 520 N.W.2d 294, 301 (Iowa 1994) (noting that "[t]he gist of a claim for trespass on land is the wrongful interference with one's possessory rights in property" and applying Restatement (Second) of Torts §§ 157–58 (1964)), *overruled on other grounds by Barreca v. Nickolas,* 683 N.W.2d 111 (Iowa 2004); *see also State ex rel. Palmer v. Unisys Corp.,* 637 N.W.2d 142, 154 (Iowa 2001) (stating that to recover for unjust enrichment, the plaintiff must establish that the defendant was enriched at the expense of the plaintiff). The Hollidays contend that they were entitled to possession of the grain elevator during the period of redemption under Iowa Code § 628.3. DeBruce argues that the Hollidays waived their right to possession by the terms of their mortgage and that the Iowa District Court for Union County cut off their right to possession when it appointed a receiver during the foreclosure proceedings and ordered the Hollidays to yield possession to the Receiver.

Iowa Code § 628.3 provides: "The debtor may redeem real property at any time within one year from the day of sale, and will, in the meantime, be entitled to the possession thereof. . . ." "Ordinarily, a debtor is entitled to possession of real property during the redemption period, and, if entitled to possession of the real property, the debtor is also entitled to the rents generated from the property." *Presidential Realty Corp. v. Bridgewood Realty Investors,* 498 N.W.2d 694, 697 (Iowa 1993); *see also Starits v. Avery,* 204 Iowa 401, 213 N.W. 769 (Iowa 1927); *Jennison v. Foltz,* Morris 490 (Iowa 1846). In turn,

the purchaser at a foreclosure acquires only a lien for the amount of the purchase money and interest, and that the legal title of the owner of the property, mortgagor, is not divested and transferred to the purchaser until the expiration of the period of redemption. During the period of redemption, the purchaser has an equitable title only which may or may not ripen into a legal title.

*In re Smith,* 9 F.Supp. 277 (S.D.Iowa 1934). The legislative provision for statutory redemption, which was adopted in 1860 and has been retained since, "manifest[s] a preference for 'protection' over 'credit.'" *Moad v. Neill,* 451 N.W.2d 4, 7 (Iowa Ct.App.1989) (citing Patrick B. Bauer, *Judicial Foreclosure and Statutory Redemption: The Soundness of Iowa's Traditional Preference for Protection Over Credit,* 71 Iowa L.Rev. 1, 81 (1985)). "One significant reason for preferring protection over credit is to give the mortgagor the income from his land during the redemption period to enable him to have additional income to redeem." *Id.* (citing Patrick B. Bauer, *Statutory Redemption Reconsidered: The Operation of Iowa's Redemption Statute in Two Counties Between 1881 and 1980,* 70 Iowa L.Rev. 343, 403 (1985)). Though a mortgagor may sell, give, or stipulate away the "right of possession" during the year of redemption, it remains a statutory privilege reserved to the mortgagor which cannot be carved out and sold at the will of a creditor. *Sayre v. Vander Voort,* 200 Iowa 990, 205 N.W. 760 (Iowa 1925).

First, DeBruce asserts that the Hollidays voluntarily relinquished their right of possession to the grain elevator during the redemption period under the terms of the mortgage. DeBruce cites several cases in which Iowa courts have held enforceable an agreement between mortgagor and mortgagee, as explicitly set forth in a mortgage, granting the mortgagee a security interest in the rents and profits from the mortgaged property

and/or the right to have a receiver appointed upon request during the foreclosure proceedings. *See Norwest Bank Des Moines v. Bruett,* 432 N.W.2d 711, 711–13 (Iowa Ct.App.1988) (holding that where a mortgage contains a pledge of rents and profits and a stipulation for appointment of a receiver upon default, and a deficiency remains following foreclosure sale of the subject premises, § 628.3 does not prohibit the appointment of a receiver); *Wellman Sav. Bank v. Roth,* 432 N.W.2d 697, 699 (holding that mortgagors gave the mortgagee a lien on their § 628.3 possession rights through the terms of their mortgage); *see also Presidential Realty,* 498 N.W.2d at 697 ("A mortgagee has a lien on rents from the date of execution of the mortgage if the mortgage conveys the rents in the granting clause rather than merely pledging them as collateral or as additional security in the event of a default.") (citing *Fed. Land Bank of Omaha v. Lower,* 421 N.W.2d 126, 128 (Iowa 1988)). DeBruce relies on mortgage language that provides

> [I]n the case of foreclosure ... on the filing of the petition for such foreclosure, or at any time during pendency of such foreclosure action, a Receiver shall be appointed to take possession and charge of the Mortgaged premises at once to rent and receive the rents, leases and profits therefrom and to have the net rents applied upon the indebtedness secured by this Mortgage, and *said receiver shall continue until the time of redemption has expired.*

Def.'s App. at 7 (emphasis added).

While the Court agrees that the Hollidays assented to relinquish their possessory rights to a receiver for the duration of the redemption period, the Court does not read this provision as a waiver of the Hollidays' possessory rights to any party other than the receiver. The narrowly tailored language of the provision does not signal that it was the intent of the Holli-

days and the Bank to stipulate to a waiver of all of the Hollidays' right of possession during the redemption period. *See Freese Leasing v. Union Trust & Sav. Bank,* 253 N.W.2d 921, 924 (Iowa 1977) ("A mortgage is subject to the principles of interpretation and construction which govern contracts generally. These principles are designed to assist in identifying the intention of the parties."). Instead, by the plain language of the provision, the Hollidays and the Bank agreed only to the appointment of a receiver in the event of foreclosure, and even then only for the purposes of collecting the rents and profits to be applied toward the indebtedness. Indeed, Iowa courts have narrowly construed similar mortgage provisions, holding that where a mortgage provides for the appointment of a receiver to apply rents and profits to the mortgage debt, a receiver will be appointed only in the event of a deficiency, and, ordinarily, the receiver should be discharged upon satisfaction of the judgment, and the debtor may have a right to rents collected from the mortgaged property which are required to satisfy the debt and costs under § 654.14. *Cmty. State Bank, Paton v. Cottington,* 444 N.W.2d 484 (Iowa 1989); *Fed. Land Bank of Omaha v. Heeren,* 398 N.W.2d 839, 843 (Iowa 1987); *Fed. Land Bank of Omaha v. Dunkelberger,* 499 N.W.2d 305, 309 (Iowa Ct.App.1993). Accordingly, the Court concludes that the mortgage language itself cannot be read to relinquish the Holliday's right to possession during the redemption period to any person other than a receiver for the purpose of applying the rents and profits to the mortgage debt.

DeBruce also argues that once the receiver had possession of the grain elevator, the Hollidays' right to possession under § 628.3 was cut off, and that DeBruce succeeded to the Receiver's right of possession when it purchased the grain eleva-

tor at the sheriff's sale. Def.'s Br. in Supp. of Mot. for Partial Summ. J. at 4–5. After a careful review of the cases De-Bruce cites in support of this proposition, the Court concludes that they do not support such an expansive rule.

In *Federal Land Bank of Omaha v. Heeren*, the Iowa Supreme Court noted that it was deviating from the general rule set forth in § 628.3 when it found that the mortgagors gave up their right to possession by consenting to the appointment of the receiver after the sheriff's sale, which satisfied the foreclosure judgment. *Heeren*, 398 N.W.2d at 842. Because the mortgagors failed to object even though there was no record to support a receivership, the court held that the receiver had ousted the mortgagors and cut off the mortgagors' right of possession to the mortgaged property for the duration of the redemption period. *Id.* at 842. In *Community State Bank, Paton v. Cottington*, the Iowa Supreme Court held that the mortgagors likewise had waived the right to continued possession of mortgaged property during the period of redemption by consenting to a decree of foreclosure in which they expressly waived all rights other than the right of redemption. 444 N.W.2d at 486–87. The Iowa Supreme Court concluded that such a waiver clearly implied a waiver of the mortgagors' possessory rights under § 628.3. *Id.*

Both *Heeren* and *Cottington* are distinguishable from the present case by the fact that the mortgagors in those cases had provided obvious waivers of their possessory rights. In *Heeren*, the record showed no grounds for the appointment of a receiver, yet the mortgagors consented to the appointment after the redemption period had already begun. 398 N.W.2d at 841. Indeed, the *Heeren* court was clear that such consent after the sheriff's sale

was an exception to the general rule against cutting off a mortgagor's possessory rights during the redemption period. *Id.* at 842. Moreover, it noted that the mortgagors might be entitled to the net proceeds of the receivership, i.e., some portion of the rents, and remanded the case for a determination of remedies available to the mortgagors. *Id.* Thus, though the *Heeren* court did hold that the plaintiffs' right to possession was cut off under the particular facts before it, it reaffirmed the general rule of § 628.3 that a mortgagor ordinarily has the right to possess the mortgaged property during the redemption period.

As this review of Iowa case law demonstrates, the Iowa courts have held that a mortgagor's rights under § 628.3 are waived only when the mortgagor has clearly consented to waive them. Given the Iowa's strong preference for protection over credit evidenced both in § 628.3 and interpreting case law, the Court concludes that the possessory right, which includes the right to rents and profits, ordinarily reverts to the mortgagor after a receivership is terminated for the duration of the redemption period, rather than to the person who has purchased the property at the sheriff's sale.[4] Here, there is no evidence that the Hollidays agreed to relinquish any rights except those specifically set forth in the mortgage. They certainly did not agree, after the sheriff's sale, that the receiver could pass possession of the grain elevator to DeBruce. Nor is there evidence in the record that they signed a foreclosure decree further restricting their rights during the redemption period, as observed in *Cottington*. Accordingly, the Court finds that DeBruce is not entitled to judgment as a matter of law in its favor on the Hollidays' claims for rent.

---

**4.** The parties do not raise the issue and, thus, the Court does not decide, if the Hollidays' right to possession was encumbered by a tenancy at will of the grain elevator by DeBruce.

## B. *Double Rent*

DeBruce also seeks summary judgment against the Hollidays' claim for double rent. Iowa Code 562.2 provides:

A tenant serving notice of intention to quit leased premises at a time named, and holding over after the time, and a tenant or the tenant's assignee willfully holding over after the term, and after notice to quit, shall pay double the rental value of the leased premises during the time the tenant holds over to the person entitled to the rent.

"The term willfully, in this context, has been construed 'to mean intentionally, deliberately, with bad or evil purpose, contrary to known duty.... [T]he term include[s] the disregard of the rights of others knowingly and with a stubborn purpose, or contrary to a known duty or without authority, and careless whether he have [sic] a right or not.'" *Youngblut v. Wilson,* 294 N.W.2d 813, 818 (Iowa 1980) (quoting *Nelson v. Deering Implement Co.,* 241 Iowa 1248, 42 N.W.2d 522, 527 (Iowa 1950)). "[A] steadfast assertion of one's own rights is not in disregard of the rights of others or contrary to a known duty and without authority." *Id.*

DeBruce first argues that it had a right to possess the grain elevator and thus cannot be deemed a holdover tenant. As set forth above, DeBruce is not entitled to judgment as a matter of law on its assertion that it had a possessory right to the grain elevator once the receivership was terminated on September 21, 2007. Accordingly, this Court cannot rule in DeBruce's favor under this theory.

■ DeBruce's secondary argument against liability for double rent is that, even if it did not have a right to possess the grain elevator, it had a bona fide claim of right to possess the grain elevator based on the Receiver's failure to terminate its lease, statements in the Receiver's Final Report, and the Iowa District Court for Union County's Order that allowed DeBruce to retain possession until the hearing in January 2008. The Hollidays counter by pointing to letters from DeBruce, arguing that these letters contain inconsistent positions which demonstrate that the hold over was willful, wanton and intentional. After review of the record, even when viewing it in the light most favorable to the Hollidays and with the benefit of all reasonable inferences, the Court finds that this conclusory assertion lacks merit.

The mere existence of inconsistent statements is insufficient to create a question of material fact regarding DeBruce's intent when it retained possession of the grain elevator. Any such inconsistencies would have to give rise to a reasonable inference that DeBruce acted intentionally, deliberately, with bad or evil purpose, or contrary to a known duty when it retained possession of the grain elevator. However, these letters demonstrate DeBruce's steadfast belief that it had a right to possess the grain elevator, as well as a willingness to work with the Hollidays to resolve the dispute. The first letter, sent on October 29, 2007, stated DeBruce's lack of knowledge regarding any termination of the receivership and its belief that it was entitled to remain in possession of the grain elevator. Pls.' App., Ex. 5. The October 29, 2007 letter also conveyed DeBruce's willingness to pay any rent due to the Receiver, but at no point did DeBruce concede that the Hollidays had a right to possess, or to rents from, the grain elevator. *Id.* The second letter, sent on November 12, 2007, expressed DeBruce's position that its right to possess the grain elevator stemmed from its purchase at the sheriff's sale, from the lease that it believed had been renewed on a month-to-month basis, and from the fact that the Hollidays had voluntarily relinquished any rights to the grain elevator during the redemption period. Pls.' App., Ex. 4. Indeed, each of

these statements is consistent with De-Bruce's previous and current legal arguments. Further, the record shows that DeBruce pursued action in the Iowa District Court for Union County to establish its possessory rights and that Iowa court ordered that DeBruce could retain possession of the grain elevator on an interim basis. DeBruce's "steadfast assertion" of its own rights and its efforts to resolve the dispute demonstrate a lack of willfulness in holding over. Accordingly, the Court concludes that DeBruce is entitled to summary judgment that it is not liable for double rent under § 562.2.

## C. *Punitive Damages*

Iowa Code § 668A.1 provides for punitive or exemplary damages, but only if "the conduct of the defendant from which the claim arose constituted willful and wanton disregard for the rights and safety of another." "Willful and wanton" is defined for the purposes of § 668A.1 as: "[t]he actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences." *Fell v. Kewanee Farm Equip. Co.*, 457 N.W.2d 911, 919 (Iowa 1990) (quoting W. Page Keeton, et al., *Prosser & Keeton on the Law of Torts* § 34, at 213 (5th ed.1984)). "[P]unitive damages are appropriate only when actual or legal malice is shown." *Mercer v. Pittway Corp.*, 616 N.W.2d 602, 617 (Iowa 2000). "Actual malice is characterized by such factors as personal spite, hatred, or ill will. Legal malice is shown by wrongful conduct committed or continued with a willful or reckless disregard for another's rights." *McClure v. Walgreen Co.*, 613 N.W.2d 225, 231 (Iowa 2000).

■ As detailed above, DeBruce consistently demonstrated its belief that it was entitled to possession of the grain elevator.

In addition, there was no clear rule regarding the central issue around which the property dispute revolved. Further, there is no evidence before the Court that the Iowa District Court for Union County, or the Receiver it had appointed, gave DeBruce reason to doubt its right to possess the grain elevator during the redemption period. The Hollidays have failed to show that there was a known or obvious risk that was highly probable to cause harm to them, much less that DeBruce unreasonably disregarded such a risk. Thus, the Court concludes that DeBruce is also entitled to summary judgment in its favor on the Hollidays' claim for punitive damages.

## D. *Attorney's Fees*

■ "A party generally has no claim for attorney fees as damages in the absence of a statutory or written contractual provision allowing such an award. Courts have recognized a rare exception to this general rule, however, when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co. of Des Moines, Inc.*, 510 N.W.2d 153, 158 (Iowa 1993) (internal citations and quotations omitted). The recovery of attorney fees requires "at the very least a showing that the defendant's culpability exceeded the section 668A.1 standard." *Id.*

The Hollidays make no claim for statutory or contractual attorney fees. *See* Pls.' Br. in Resistance to Def.'s Mot. for Partial Summ. J. at 5. As discussed above, the Hollidays have failed to present a genuine issue of material fact as to whether DeBruce acted willfully and wantonly under the § 668A.1 standard. Since the claim for punitive damages fails as a matter of law, it follows that the Hollidays' claim for attorney fees also fails as a matter of law.

### E. *Damages from Loss of Sale*

The Hollidays do not resist DeBruce's request for summary judgment on their claims for damages as a result of a lost sale of the grain elevator (Count I). Indeed, the Hollidays confirm they are not seeking such damages. Accordingly, DeBruce is entitled to summary judgment in its favor on Count I.

## IV. CONCLUSION

For the reasons stated above, DeBruce's Motion for Partial Summary Judgment (Clerk's No. 26) is GRANTED in part and DENIED in part. Specifically, DeBruce's Motion for Partial Summary Judgment is denied with respect to the Hollidays' claims for rent, but granted in all other respects.

IT IS SO ORDERED.